IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERNESTO PABLO LORENZO,

        Petitioner,

    v.                                                               Case No. 2:25-cv-00923 KWR-GJF

PAMELA BONDI, *in her official capacity as*
*Attorney General of the United States*,
KRISTI NOEM, *in her official capacity as Secretary*
*of the Department of Homeland Security*,
MARY DE ANDA-YBARRA, *Field Office Director*,
DORA CASTRO, *Warden of Otero County Processing Center*,

        Respondents.

## MEMORANDUM OPINION AND ORDER GRANTING PETITIONER'S HABEAS PETITION

**THIS MATTER** comes before the Court on Ernesto Pablo Lorenzo's ("Petitioner") Petition for Writ of Habeas Corpus (Doc. 1). In seeking release from custody, Petitioner, a citizen of Guatemala, alleges violations of the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(6), and his Fourth and Fifth Amendment rights. **Doc. 1 at 9–13**. The Government contests this Petition arguing that Petitioner failed to exhaust the administrative remedies available to him, and alternatively, he fails to demonstrate that there is not a significant likelihood of removal in the reasonably foreseeable future. **Doc. 9 at 11**. Because exhausting the administrative procedure that the Government provides is prudential and Petitioner's interest in prompt access to a federal judicial forum outweighs the countervailing institutional interests, the Court will not require administrative exhaustion.

Petitioner cannot be removed to Guatemala. **Doc. 9-3 at 1**. Petitioner has been detained for more than six months, and the Government has failed to demonstrate that Mexico has responded to their request to accept Petitioner. **Doc. 9-4 ¶¶ 10, 14**. Thus, the Court finds that Petitioner demonstrates that there is not a significant likelihood of removal in the reasonably foreseeable future and that the Government has failed to rebut his showing.

Having reviewed the briefing, exhibits, and the relevant law, the Court finds that the Petition is well-taken, and therefore, is **GRANTED**.

## BACKGROUND

On November 9, 2014, Petitioner entered the United States without proper documentation and was processed for removal. *Id.* ¶ 4. Petitioner expressed fear of returning to Guatemala, and an immigration judge issued an order withholding removal to Guatemala. *Id.* ¶¶ 5, 8. Petitioner was released on bond on December 16, 2014. *Id.* ¶ 7. On April 24, 2018, Petitioner was placed on an order of supervision and his bond was cancelled. *Id.* ¶ 9.

On or about June 10, 2025, Enforcement and Removal Operations ("ERO") arrested and detained Petitioner.[1] *Id.* ¶ 10. Petitioner, alongside several other Latino men, was waiting in a Home Depot parking lot for potential employment as a laborer. **Doc. 1 ¶ 21**. ERO processed Petitioner as a noncitizen with a final order of removal. **Doc. 9-4 ¶ 10**.

On June 12, 2025, ERO issued Petitioner a Form I-241 notifying him that the Government pursued third country removal to Mexico. *Id.* ¶ 14. On August 20, 2025, ERO emailed Mexico requesting that Petitioner be accepted "under [the] CVNH program." *Id.* On September 4, 2025, ERO completed a "90 Day Post Custody Review," and Petitioner remained detained. *Id.* ERO

---

[1] Petitioner alleges he was detained on June 9, 2025. **Doc. 1 ¶ 21**. However, DHS Officer Francisco Ruiz, per his declaration, stated that Petitioner was detained on June 10, 2025. **Doc. 9-4 ¶ 10**. The difference of one day does not impact the Court's analysis.

referred Petitioner to United States Citizenship and Immigration Services for a credible fear determination. *Id.* On September 17, 2025, Petitioner's credible fear determination was conducted without his attorney present. **Doc. 1 ¶ 27**. ERO attempted to remove Petitioner to Mexico on September 24, 2025, but ERO claims that removal was unsuccessful due to procedural issues with his credible fear determination. **Doc. 9-4 ¶ 14**. Petitioner has since been given a credible fear determination, with counsel present, and the determination was negative. *Id.* The Government has provided no communications indicating that Mexico will accept, or is considering accepting, Petitioner. But ERO asserts that it continues to pursue third country removal. *Id.* **¶ 15**.

On December 19, 2025, the Court directed the parties to provide supplemental briefing on the issues of whether exhaustion is prudential and should be required, and whether the Petitioner's 90 Day Post Custody Review rendered further review futile. **Doc. 11 at 2–5**. The Court also welcomed any new documentation weighing on the likelihood of Petitioner's removal. **Doc. 11 at 5**. Only the Government provided a response. **Doc. 12**.

## LEGAL STANDARD

An immigration detainee "in custody in violation of the Constitution or laws or treaties of the United States" may seek habeas relief. 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Pursuant to the Immigration and Nationality Act, the Government must remove a noncitizen within a 90-day removal period. 8 U.S.C. § 1231(a)(1)(A). During the 90-day removal period, the noncitizen must be detained. *Id.* § 1231(a)(2). The removal period begins when the removal order "becomes administratively final." *Id.* § 1231(a)(1)(B)(i).

Upon expiration of the initial removal period, the Government may continue to detain the noncitizen, but not indefinitely. *Id.* § 1231(a)(6); *Zadvydas*, 533 U.S. at 699. Continued detainment

for six months is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. After six months, if the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must then rebut the noncitizen's showing. *Id.*

## DISCUSSION

The Government argues that Petitioner should be required to exhaust the administrative remedies available to him under 8 C.F.R. § 241.13, and in the alternative, that he fails to meet his burden under *Zadvydas*. **Doc. 9 at 11**. The Court will address each argument in turn.

I. **The Court declines to require that Petitioner exhaust the remedies available to him under Section 241.13.**

The Government argues that Petitioner should be required to exhaust administrative remedies under Section 241.13 or show the procedure's futility. **Doc. 9 at 11–12**. Petitioner contends that he has fully exhausted all available administrative remedies, and that administrative review would be futile. **Doc. 10 at 2–3**. The Court finds that administrative exhaustion under Section 241.13 is prudential and not required, and additionally, Petitioner's interest in prompt access to a federal judicial forum outweighs the countervailing institutional interests calling for exhaustion.

Generally, those seeking habeas relief must exhaust their administrative remedies, *see Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986), but the Tenth Circuit has not addressed whether exhaustion of the procedure under Section 241.13 is required, s*ee Quintana Casillas v. Sessions*, No. 1:17-cv-01039-DME-CBS, 2017 WL 3088346, at *8 (D. Colo. July 20, 2017). However, the Tenth Circuit has held that regarding "immigration laws, exhaustion of remedies is statutorily required only for appeals of final orders of removal." *Id.* (citing *Hoang v. Comfort*, 282 F.3d 1247, 1254 (10th Cir. 2002)); *see also* 8 U.S.C. § 1252(d)(1) ("A court may review a final order only if . . . the alien has exhausted all administrative remedies available."). Courts in this

4

circuit have found that exhausting Section 241.13's procedure is prudential, not jurisdictional. *See Quintana Casillas*, 2017 WL 3088346, at *8; *see also Jimenez Chacon v. Lyons*, No. 2:25-cv-977-DHU-KBM, 2025 WL 3496702, at *5 (D.N.M. Dec. 4, 2025). Moreover, the Tenth Circuit has noted that challenges to immigration detention under *Zadvydas* "are properly brought directly through habeas" and that "the exhaustion deficiencies we have noted in other respects do not affect habeas jurisdiction over such claims." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004). Exhaustion may not be required if "a petitioner can demonstrate that exhaustion is futile."[2] *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010).

### A. The prudential factors neither weigh for nor against requiring exhaustion.

The Government argues that Petitioner should be required to exhaust the administrative process under Section 241.13 or show futility. **Doc. 9 at 11**. Petitioner contends that exhaustion should not be required because no meaningful remedies are available to him and further pursuit would be futile. **Doc. 10 at 2**. The Court finds that the prudential factors neither weigh in favor nor against requiring exhaustion in this case.

---

[2] Petitioner argues that exhaustion would be futile. **Doc. 10 at 2–3**. The Government contends that Petitioner cannot show that exhaustion would be futile. **Doc. 9 at 11**. A court in this district has found exhaustion to be futile when "ICE headquarters" already reviewed a petitioner's custody and decided to continue their detention. *See Salazar-Martinez v. Lyons*, No. 2:25-cv-00961-KG-KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025). Here, on September 4, 2025, ERO conducted a "90 Day Post Custody Review" and continued Petitioner's detention. **Doc. 9-4 ¶ 14**. The 90 Day Post Custody Review does not render exhaustion futile. The 90 Day Post Custody Review considered whether Petitioner was a flight risk warranting continued detention, not whether Petitioner should have been released because removal was not reasonably foreseeable. *See* **Doc. 12 at 5**. Nevertheless, the futility inquiry is an alternate ground for not requiring exhaustion. Since Petitioner challenges his immigration detention, "exhaustion deficiencies" do not necessarily present a jurisdictional bar to district court review. *See Soberanes*, 388 F.3d at 1310. Therefore, the futility inquiry is not dispositive to our exhaustion analysis.

"[S]ound judicial discretion governs" where Congress has "not clearly required exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).[3] Exhaustion is favored when (1) the "action under review involves exercise of the agency's discretionary power," and (2) the agency procedure at issue allows for "the agency to apply its special expertise." *Id.* at 145. An individual's interests weigh heavily against requiring exhaustion in the following three circumstances: (1) when the administrative remedy "may occasion undue prejudice to subsequent assertion of a court action"; (2) when there is doubt that the agency is "empowered to grant effective relief"; and (3) when an administrative body is "shown to be biased" or shown to have predetermined the issue before it. *Id.* at 146–49.

Here, the factors favoring exhaustion are not particularly applicable. Although the decision to detain and remove involves agency discretion, due process concerns and *Zadvydas* restrict that discretion when a noncitizen is detained beyond the presumptively reasonable period, as is the case here. *See* 533 U.S. at 695 (noting that Congress's "plenary power" over immigration law is cabined by "important constitutional limitations"). Further, determining whether future removal is significantly likely does not call for specific "agency expertise." *See Jimenez Chacon*, 2025 WL 3496702, at *9 (finding that determining the foreseeability of removal does not require the exercise of agency expertise). The primary consideration of a *Zadvydas* claim concerns the likelihood of future removal and determining that likelihood turns on the reasonableness of his detention under *Zadvydas*. Further, the parties have presented the Court the relevant facts and documentation concerning Petitioner's likelihood of removal, and thus, the Court is well prepared to address the

---

[3] *McCarthy* has been superseded by the Prison Litigation Reform Act, 42 U.S.C. § 1997e, but only as it relates to prison litigation subject to the PLRA. *See Jimenez Chacon*, 2025 WL 3496702, at *5 n.3.

*Zadvydas* inquiry. Therefore, the factors weighing in favor of exhaustion do not hold particular weight here.

As to the factors weighing against requiring exhaustion, Petitioner neither argues that the administrative remedy may occasion undue prejudice on a later court action nor that the agency has shown bias or predetermined the outcome. The Court finds that neither factor applies here. Petitioner does contend, however, that the administrative process provided for under Section 241.13 does not empower the agency to grant him the relief he seeks.[4] **Doc. 10 at 2**. The Court disagrees. Petitioner seeks immediate release either without or with conditions of supervised release. **Doc. 1 at 15**. Pursuant to Section 241.13, the Headquarters Post-Order Detention Unit ("HQPDU") will conduct a formal review and issue a written decision whether there exists a significant likelihood of removal in the reasonably foreseeable future after a petitioner submits a written request for release. 8 C.F.R. § 241.13(d)–(f). If the HQPDU determines that the likelihood of release is not significant, the HQPDU may release the noncitizen on supervision. 8 C.F.R. § 241.13(h).

If Petitioner followed the procedure set forth by Section 241.13, the HQPDU would consider several factors similar to the *Zadvydas* inquiry of whether there is a significant likelihood of removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(f); *see also E.M.M. v. Almodovar*, No. 1:25-cv-08212-MMG, 2025 WL 3077995, at *3 (S.D.N.Y. Nov. 4, 2025) (noting that Section 241.13 was promulgated "to codify" the *Zadvydas* procedures). If the HQPDU makes a determination in Petitioner's favor, the HQPDU would release Petitioner on conditions of supervision. 8 C.F.R. § 241.13(h). Prior to his detention, Petitioner was already placed on an order

---

[4] Petitioner also argues that "ICE never conducted the mandatory 90-day post-order custody review," and HQPDU review is not available until that takes place. However, Officer Ruiz states that ERO completed a "90 Day Post Custody Review" on September 4, 2025. **Doc. 9-4 ¶ 14**.

7

of supervision. **Doc. 9-4 ¶ 9**. Thus, the HQPDU is empowered to grant Petitioner the relief he seeks. Therefore, the Court finds that the prudential considerations do not apply with particular strength in this case.

### B. Petitioner's interest in prompt access to a federal judicial forum outweighs the institutional interests favoring exhaustion.

The Government argues that if the Court does not require exhaustion, it would encourage deliberate bypass of the administrative scheme and impact the administrative process. **Doc. 9 at 12**. Petitioner has already been detained beyond the presumptively reasonable period, and he challenges his immigration detention which is "properly brought directly through habeas." *Soberanes*, 388 F.3d at 1310. Thus, the Court cannot find that the existence of an unspecified impact on an administrative scheme outweighs the clear impact upon Petitioner's due process rights warranting prompt access to a federal judicial forum. *See Zadvydas*, 533 U.S. at 694–95.

In exercising sound judicial discretion, a court must "balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146. In addition to the prudential considerations, Petitioner's due process rights at stake warrant judicial review. *See Plyler v. Doe*, 457 U.S. 202, 210 (1982) (noting that the Due Process Clause applies to all "persons" within the United States). Petitioner has been detained for over six months, *see* **Doc. 9-4 ¶ 10**, and the presumptively reasonable period of detainment has expired, *see Zadvydas*, 533 U.S. at 701.

Here, the Court cannot find that the institutional interests favoring exhaustion outweigh Petitioner's interest in prompt access to a federal judicial forum. The Government contends that not requiring exhaustion "has an impact on the post detention process, but also on the preadmission administrative process." **Doc. 9 at 12**. The Government's analysis concerning its administrative interests stops there. Without more, the Court is not convinced that these unspecified impacts

justify requiring Petitioner to pursue relief through Section 241.13 after already being detained for over six months. Further, dismissing this Petition would not promote judicial efficiency as the presumptively reasonable six months have already past and the Court already requested additional documentation bearing on the likelihood of Petitioner's removal to which the parties provided no additional documents. *See* **Doc. 11 at 5**; **Doc. 12 at 6**. Thus, the Court is sufficiently presented with the facts bearing on the likelihood of Petitioner's removal. Requiring Petitioner to proceed through Section 241.13's procedures when neither party has given any indication of new facts relevant to Petitioner's likelihood of removal would unnecessarily delay the *Zadvydas* review that is warranted after six months.

In addition to balancing Petitioner's interest and the institutional interests, Tenth Circuit precedent indicates that challenges to immigration detention "are properly brought directly through habeas." *Soberanes*, 388 F.3d at 1310 (citing *Zadvydas*, 533 U.S. at 678–88)). Additionally, Tenth Circuit precedent requiring exhaustion in habeas matters appears inapplicable here. The *Williams* court reasoned that judicial intervention should be deferred until exhaustion because the Bureau of Prisons was statutorily responsible for computing the service of the prison sentence under 18 U.S.C. § 3568. 792 F.2d at 987; *see also Smoake v. Willingham*, 359 F.2d 386, 388 (10th Cir. 1966) (noting that judicial intervention prior to exhaustion would be taking the Attorney General's authority delegated by 18 U.S.C. § 4001). The *Zadvydas* inquiry concerning indefinite detention has not been statutorily reserved for the agency like in *Williams* which is why challenges brought under *Zadvydas* may be brought "directly through habeas." *Soberanes*, 388 F.3d at 1310.

Accordingly, in finding that exhaustion of Section 241.13 is prudential and that exhaustion, here, would unnecessarily delay the administration of justice, the Court will not require Petitioner to exhaust his Section 241.13 remedies.

**II.     Petitioner's continued detention violates 8 U.S.C. § 1231 under *Zadvydas*.**

The Government contends that Petitioner has failed to meet his burden demonstrating that removal is not significantly likely in the reasonably foreseeable future. **Doc. 9 at 12–13**. Petitioner argues that he has met his burden, and the Government has failed to rebut his showing. **Doc. 10 at 3–5**. Petitioner cannot be removed to Guatemala. **Doc. 9-3 at 1**. The Government failed to remove Petitioner to Mexico, and the Government has not received any correspondence from Mexico indicating that they will accept him. *See* **Doc. 9-4 ¶¶ 14–15**. Thus, the Court finds that Petitioner has met his burden, and the Government has failed to rebut Petitioner's showing.

A noncitizen may be detained beyond the removal period only for the time "reasonably necessary to secure removal." *See Zadvydas*, 533 U.S. at 699. Six months has been presumed to be reasonable. *Id.* at 701. Thus, after six months, if a noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must rebut the noncitizen's showing. *Id.* Given a sufficient showing by the Government, the noncitizen may be confined "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Although *Zadvydas* dealt with a noncitizen deemed removable after gaining admission to the United States, its holding applies to noncitizens who are deemed inadmissible. *Clark v. Martinez*, 543 U.S. 371, 386 (2005); *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123–24 (10th Cir. 2005) (finding that, in *Clark v. Martinez*, the Supreme Court expanded *Zadvydas* to apply to inadmissible noncitizens).

Petitioner demonstrates that there is not a significant likelihood that he will be removed in the foreseeable future. It is undisputed that Petitioner is a Guatemalan citizen and a grant withholding removal to Guatemala remains in place. **Doc. 9-3 at 1**. On June 12, 2025, Petitioner was given notice that he would be removed to Mexico. **Doc. 9-4 ¶ 14**. On August 20, 2025, ERO

submitted an email seeking "acceptance of [Petitioner] under [the] CVNH program to Mexico." *Id.* Despite requesting acceptance nearly five months ago, the Government fails to state or provide documentation demonstrating that Mexico has accepted Petitioner under the CVNH program. A months-old email request, without any response indicating an acceptance, does not amount to a significant likelihood that Petitioner will be removed in the reasonably foreseeable future.

The Government fails to rebut Petitioner's showing. The Government argues that Petitioner was "on the cusp of being removed" and, after his negative credible fear determination, "nothing suggests that there is no significant likelihood or removal in the reasonably foreseeable future." **Doc. 9 at 13**. While the Government contends that Petitioner was "on the cusp" of being removed to Mexico, the Government has not demonstrated that Mexico has provided any response that indicates Petitioner might be accepted. *See* **Doc. 9-4 ¶ 14**. Several courts have granted habeas petitions under *Zadvydas* when the government has only demonstrated unilateral effort without establishing actual progress toward removal. *See Ahrach v. Baltazar*, No. 25-cv-03195-PAB, 2025 WL 3227529, at *5 (D. Co. Nov. 19, 2025) (finding that the government did not meet its burden by reaching out to three countries soliciting removal without receiving a response); *see also Hassoun v. Sessions*, No. 1:18-cv-00586-FPG, 2019 WL 78984, at *5 (W.D.N.Y. Jan. 2, 2019) (finding that the government failed to meet its burden when it had four requests for travel documents pending for about five months). Further, the Court welcomed additional documentation bearing on the likelihood of Petitioner's removal, but the Government provided no such documentation. *See* **Doc. 11 at 5**.

The Government contends that Petitioner was not removed because of "issues raised by his legal counsel"; presumably, an issue being that the first credible fear determination was conducted without counsel present. *See* **Doc. 9-4 ¶ 14;** *see also* **Doc. 10 at 4.** On October 14, 2025, Petitioner

11

received a negative credible fear determination, based upon a second interview with counsel present. **Doc. 9-4 ¶ 14.** But still, Petitioner has not been removed, and the Government has not provided any documentation or argument that Mexico has responded to their email or agreed to accept Petitioner. The Government's contention that "ERO continues to pursue third country removal," **Doc. 9-4 ¶ 15**, for Petitioner does not demonstrate a significant likelihood that he will be removed in the reasonably foreseeable future, *see Jimenez Chacon*, 2025 WL 3496702, at *8 (noting that reaching out to a third party country about removal without receiving any indication of likely acceptance fails to demonstrate a significant likelihood of removal in the reasonably foreseeable future); *see also Salazar-Martinez*, 2025 WL 3204807, at *2 (finding that the government failed to meet its burden when it submitted repatriation requests to four countries and two were denied and two received no response for five months). Accordingly, the Government has failed to rebut Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future.

### III.   The Court need not address Petitioner's Fourth and Fifth Amendment claims.

In further pursuit of immediate release, Petitioner argues that the initial seizure violated his Fourth Amendment rights, *see* **Doc. 10 at 5–6**, and he contends that being issued a Form I-229(a) "Warning for Failure to Depart" violated his Fifth Amendment rights,[5] **Doc. 7 at 1**. The Government contends that the initial seizure did not violate Petitioner's Fourth Amendment rights, but the Government does not address Petitioner's Fifth Amendment argument about the Form I-229(a). **Doc. 9 at 13**. Since the Court will grant habeas relief under Petitioner's *Zadvydas* claim,

---

[5] Petitioner moves to supplement this claim to his original Habeas Petition. **Doc. 7**. The Government did not contest this supplement at any point. Because the Court considers Petitioner's supplemental claim here, Petitioner's Motion to Supplement Petition for Writ of Habeas Corpus (**Doc. 7**) is denied as moot.

granting further relief under Petitioner's remaining claims would be cumulative. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting full relief on a separate claim because any additional relief would be cumulative); *see also Scott v. Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002) (declining to address the remaining habeas claims after granting habeas relief on a separate claim). This approach is consistent with a fundamental principle of judicial restraint that requires courts to avoid constitutional questions unless their decision becomes necessary. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (noting that if "no additional relief would have been warranted, a constitutional decision would have been unnecessary and therefore inappropriate"). Accordingly, the Court declines to address Petitioner's remaining Fourth and Fifth Amendment claims.

### IV. Petitioner may file an Equal Access to Justice Act application to pursue reasonable costs and fees.

Petitioner requests that the Court award attorney's fees and costs under the Equal Access to Justice Act ("EAJA"). **Doc. 1 at 15**. The Government does not address Petitioner's request for fees and costs. In light of recent Tenth Circuit precedent and the relevant procedure, the Court finds that it may consider Petitioner's request for attorney's fees and costs provided that Petitioner follows proper EAJA procedure.

The EAJA provides for the following procedure:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Finding that "'civil action' unambiguously refers to any legal action brought to enforce a private or civil right, or to redress a private wrong," the Tenth Circuit held

that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1159, 1166 (10th Cir. 2025).

A fee award is required if (1) the plaintiff prevails, (2) the Government's position was not "substantially justified," and (3) there are no special circumstances rendering an award of fees unjust. *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting 28 U.S.C. § 2412(d)(1)(A)). While fees are authorized, the EAJA requires that Petitioner, "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses," and an allegation demonstrating that "the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(A), (B). Upon filing this application, the Government must justify its position in any underlying proceedings and district court litigation. *See Hackett*, 475 F.3d at 1170.

Since the Court grants Petitioner's habeas relief, should Petitioner continue to pursue costs and fees, Petitioner is instructed to file an EAJA application following the appropriate procedure.

## CONCLUSION

In sum, the Court finds that exhaustion under Section 241.13 is prudential and not required here. The Court also finds that Petitioner's continued detention runs afoul of 8 U.S.C. § 1231(a)(6) and *Zadvydas*. Accordingly, the Court finds that Petitioner is entitled to habeas relief.

**IT IS THEREFORE ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (**Doc. 1**) is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Petitioner be released from custody by 5:00 p.m. on January 13, 2026, under the same terms of supervision, if any, that were in place at the time of his detention on June 10, 2025. The Government is directed to file certification that Petitioner has been released.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Supplement Petition for Writ of Habeas Corpus (**Doc. 7**) is **DENIED AS MOOT**.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE